403 So.2d 683 (1981)
STATE of Louisiana
v.
Kathleen M. LEHNEN and Linda J. Flowers.
No. 81-KA-0034.
Supreme Court of Louisiana.
September 8, 1981.
*684 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Sheila Myers, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Ralph S. Whalen, Jr. of Oestreicher & Whalen, New Orleans, for defendant-appellant.
LEMMON, Justice.[*]
This case raises the question of the standard to be applied by a court reviewing a search warrant when the affiant, in good faith and without an intent to deceive, omits material facts from the affidavit supporting the warrant.
In attacking the affidavit in this case, which on its face clearly supports the magistrate's finding of probable cause, defendants do not assert that any of the statements are false, in the sense of being affirmative misrepresentations. Rather, defendants attack the affidavit on the basis that the affiants omitted certain known facts which would have detracted from the showing of probable cause. Such omissions, defendants contend, require the deletion of the relevant and truthful facts, the impact of which is lessened by the omitted facts.
The affidavit essentially recited information reported to the affiants, who were police officers, by defendants' neighbor, Mrs. Joyce Hagmann, and by her son, *685 George Hagmann. The latter reported that he had recently seen Michael Palmer bring two M-16 automatic rifles (which are illegal weapons) into an apartment located upstairs from his mother's apartment and that he was familiar with M-16 automatic rifles because of his military experience.[1]
Mrs. Hagmann told the officers that four days earlier someone in the upstairs apartment, occupied by Palmer and defendants, had pointed a rifle at a 12-year old visitor to her apartment, but that the police did not make an arrest because the visitor could not identify the person who had pointed the gun at her. She also reported that Palmer on previous occasions had discharged firearms in the backyard of the apartment building.
Upon investigation the affiants discovered that Michael Palmer had a police record of recent arrests for aggravated assault and illegal discharging of firearm and that defendant Lehnen, of the same address, had a record of arrests and a period of probation for drug violations.[2] The circumstances thus indicated a reasonable basis for crediting the reports by the identified citizen informants.[3] The affidavit on its face therefore clearly established probable cause to search Palmer's apartment for the M-16's, the possession of which is generally prohibited by R.S. 40:1751 et seq.
When the police executed the search warrant, they found a large quantity of hashish (a controlled dangerous substance), but no illegal firearms.[4] Defendants and Palmer were then arrested and charged with possession of hashish with intent to distribute.
At the hearing on their motion to suppress defendants offered the testimony of Officer Cannatella, one of the affiants, and of George Hagmann. Both witnesses admitted that Hagmann realized the similarity between the automatic M-16 and the AR-15, a military weapon not covered by the prohibitions involving automatic weapons. See R.S. 40:1751 et seq. Both also admitted that Hagmann told Officer Cannatella he was standing about 25 to 30 feet from Palmer, at which distance it was virtually impossible to be sure that the weapons were M-16's and not AR-15's. None of this information was included in the affidavit. Nevertheless, Hagmann insisted during the suppression hearing that he thought the two rifles were M-16's, not AR-15's, and he reiterated under oath that he told the officers that the weapons were M-16's.
The trial court denied the motion to suppress the hashish. Defendants thereafter entered guilty pleas, reserving their right to appeal the adverse ruling.[5] See State v. Crosby, 338 So.2d 584 (La.1976).
The trial court heard the testimony of Officer Cannatella and concluded that he was not acting with an intent to deceive the issuing magistrate when he failed to include in the affidavit the facts regarding the similarity of the weapons and the difficulty of determining the distinction at the distance involved.[6] We are therefore not confronted with a situation in which facts were *686 omitted from an affidavit for the purpose of misleading the issuing magistrate.[7] However, while our examination of the record satisfied us that the trial court's finding of good faith is amply supported, the omitted facts were nevertheless relevant and should have been included. We are therefore required to determine what approach should be taken by an appellate court in reviewing the denial of a motion to suppress, when the affiant in a search warrant omits, without bad faith on his part, relevant facts which might have affected the issuing magistrate's decision on probable cause.
We cannot conclude that the omitted facts would not have affected the magistrate's decision regarding probable cause. However, we do not agree with defendant's argument that all of the affidavit's truthful factual assertions, about which the omitted facts were relevant, must be deleted in determining probable cause. Rather, we prefer to follow the approach that the court reviewing the warrant (either this court on appeal or a trial court on a motion to suppress) must consider the affidavit as though the omitted facts were included and then evaluate the presence of probable cause in light of the added facts.[8]
In cases in which the affiant has made a negligent, but unintentional, mis representation, this court has taken the approach which requires the reviewing court to delete the misinformation and retest the sufficiency of the remaining facts to establish probable cause. See State v. Rey, 351 So.2d 489 (La.1977).[9] The approach here is essentially the same: the reviewing court simply adds the omitted facts to those originally included in the affidavit and retests the sufficiency of the showing of probable cause. Both approaches involve correcting and retesting.
The approach taken in the present case represents a reasonable and just accommodation between a defendant's interest in limiting invasions of his privacy to those based upon a magistrate's determination of probable cause and society's interest in using reliable evidence to convict those who violate criminal laws. The exclusion of reliable evidence is too high a price to pay unless exclusion is essential to deter deliberate violations of constitutional rights. Further, this approach is in accordance with the growing recognition that the exclusionary rule has limited efficacy as a deterrent in situations in which officers have acted in good faith. See United States v. Williams, 622 F.2d 830 (5th Cir. 1980), Gee and Vance, concurring; United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1974).
Applying this standard, we conclude that the trial court properly denied the motion to suppress. As the trial court stated, the prior report of the aggravated assault and defendant's prior arrest for assault certainly played a significant role in supporting the magistrate's determination of probable cause. The sighting of the suspected *687 automatic weapons was not the sole basis for believing that probable cause existed to conduct a search of the apartment. Further, as Hagmann testified, he was convinced that the weapons were in fact M-16's and so advised the officers.[10] The fact that Hagmann could easily have misidentified AR-15's for M-16's does not defeat the significance of Hagmann's assertions, especially when coupled with the fact that affiant had been informed of defendant's prior reckless and illegal behavior with firearms.
A trial court's determination of probable cause is entitled to significant deference by this court. State v. Ogden, above; United States v. Middleton, 599 F.2d 1349 (5th Cir. 1979). This is true even when, as here, the officers in good faith omitted relevant facts from the affidavit presented to the issuing magistrate. The affidavit supporting issuance of a search warrant must be construed nontechnically and in a common sense fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The probable cause standard recognizes that a degree of uncertainty may exist, since probable cause is not proof beyond a reasonable doubt. State v. Guidry, 388 So.2d 797 (La.1980). The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. See State v. Abadie, above; State v. Phillips, 347 So.2d 206 (La.1977).
The purpose of the warrant requirement and of the necessity of showing probable cause to a neutral magistrate is to prevent invasions of innocent privacy. That purpose was served here. The facts presented to the magistrate warranted his inference of probable cause. Even when the omitted facts were disclosed, the trial court nevertheless found that probable cause existed and that a reasonable magistrate would have reached that conclusion.[11]
Thus, applying the standard we have adopted in this case, we affirm the trial court's determination that a reasonable magistrate would have issued the warrant despite the inclusion of the omitted facts. The motion to suppress was properly denied.[12]
Accordingly, the convictions and sentences are affirmed.
DENNIS and CALOGERO, JJ., concur with reasons.
DENNIS, Justice, concurring.
I do not join in the majority opinion's oblique endorsement of the "good faith" exception to the exclusionary rule which has been proposed in dicta by a dozen of the twenty-four United States Fifth Circuit Court of Appeals judges. I share the misgivings of Judge Rubin, who was joined by Godbold, Kravitch, Johnson, Politz, Hatchett, Anderson, Randall, Tate and Clark, Circuit Judges, as he observed:
"[F]ive members of the [United States Supreme] court up to now have not suggested [the exclusionary rule's] qualification, and they constitute a majority. No other circuit court has altered the rule. Consideration of these factors should make us hesitate to rush in with our own newly devised judicial solutions. Those who join in the opinion authored by Judges Gee and Vance can cite no direct precedent for their conclusions save dissents and law review articles, many of which are polemic. They advocate modification *688 of the exclusionary rule solely because, as applied, they think it ineffective to deter police misconduct and because they consider deterrence its exclusive purpose.
"Deterrence is an important reason for the rule. However, even the decision in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), did not consider it the only basis of the rule. Justice Day's opinion relies on the duty of the courts to support the Constitution and to refuse to sanction practices destructive of rights secured by it. * * *
"* * *
"* * * The announcement of a radical change in the scope of the exclusionary rule creates a host of interpretative problems. Its application presumably will require retrial of almost every motion to suppress in every criminal case now pending before us on appeal and in many cases now pending in district courts. * * *" United States v. Williams, 622 F.2d 830, at 849-50. (Rubin, J., concurring). [footnote omitted]
This case does not present a novel issue. In State v. Rey, 351 So.2d 489 (La.1977), this court unanimously held that if misrepresentations in a search warrant affidavit are found to be unintentional, it must then be decided whether a showing of probable cause is made by the warrant without reference to incorrect facts. This rule clearly implies that a misleading omission must be rectified by supplying the missing information.
Accordingly, I respectfully concur, preferring to reach the same result by our own principles rather than follow those who are reaching out for a vehicle to change a long line of precedent because I believe "that their doing so will have harmful results apart from the merit or lack of merit of their views." United States v. Williams, supra, 622 F.2d at 848 (Rubin, J., concurring).
CALOGERO, Justice, concurring.
I respectfully concur. The discussion in the majority opinion regarding the exclusionary rule is unnecessary dicta.
NOTES
[*] Judges Frederick S. Ellis, Morris A. Lottinger, Jr. and Elven E. Ponder of the First Circuit Court of Appeal participated in this decision as Associate Justices ad hoc, joined by Justices Calogero, Dennis, Watson and Lemmon.
[1] The alleged sighting occurred on April 30, 1979. The report was made to officers on May 1, 1979. The defendants make no claim that the information was stale. See State v. Ogden, 391 So.2d 434 (La.1980).
[2] Such information is, of course, relevant in determining probable cause. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
[3] Reports by citizen informants, who are willing to be identified and who purport to have firsthand knowledge, carry a high indicia of credibility and reliability in the determination of probable cause. See State v. Abadie, 390 So.2d 517 (La.1980); United States v. Darensbourg, 520 F.2d 985 (5th Cir. 1975).
[4] No objection is raised regarding the scope of the search under the warrant.
[5] Palmer also eventually entered a guilty plea, but is not a party to this appeal.
[6] In denying the motion, the trial judge said:

"I believe the officer had a right to rely upon the good faith affidavit of the informant who was named. I don't think there was any question that all parties were acting in good faith in filing the affidavit. There was no intention to mislead or to fabricate the affidavit."
[7] In cases involving inclusion of false information with deceitful intent we have quashed the warrant. See State v. Paster, 373 So.2d 170 (La.1979); State v. Ogden, above.
[8] This was the approach taken in People v. Kurland, 28 Cal.3d 376, 168 Cal.Rptr. 667, 618 P.2d 213 (Cal.1981).
[9] When the misrepresentation is intentional, however, a more drastic sanction has been imposed, as noted in State v. Ogden, above at 438, as follows:

"As this court said in Rey, an intentional misrepresentation to the magistrate by a police officer constitutes a `fraud upon the courts and represent(s) impermissible overreaching by the government.' 351 So.2d at 492. This court in Rey held that the proper sanction in such a case is to quash the warrant and not merely to excise the intentionally misrepresented facts and examine the remainder of the affidavit to determine whether probable cause is still shown. Compare Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
"Under the Supreme Court's approach in Franks, even deliberate falsehoods by a police affiant or statements by a police affiant evincing a reckless disregard for truth need only be excised from the affidavit. The remaining facts are then examined to determine whether they warrant a finding of probable cause absent the misrepresentations. The Rey decision provided a more realistic approach to reprehensible police conduct, which the exclusionary rule is designed to prevent."
[10] As the trial court noted, Hagmann's observation of a "banana clip" reasonably led him to believe these were illegal automatic weapons.
[11] The trial court obviously considered the omitted facts and still concluded that probable cause had been satisfactorily shown. His statement of reasons for his ruling reveal that he in effect evaluated the affidavit facts in addition to the omitted facts and still found probable cause.
[12] Defendants argue that a United States District Court reached a different conclusion in a federal criminal case involving execution of this same warrant. That contrary result has no bearing on the outcome of this case. See Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Furthermore, in the federal case Palmer, who was not a party to this appeal, was the defendant. Apparently, the federal prosecutor did not appeal that adverse ruling and dismissed the indictment against Palmer.