444 So.2d 1200 (1984)
STATE of Louisiana
v.
Jody Oliviera MORRIS and Donald Tommy Morris.
No. 83-KK-1451.
Supreme Court of Louisiana.
January 16, 1984.
Rehearing Denied February 15, 1984.
*1201 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval Rhodes, Dist. Atty., Dixie C. Brown, Asst. Dist. Atty., for plaintiff-relator.
John T. Pettigrew, Houma, for defendants-respondents.
DENNIS, Justice.
This is a review of a trial court ruling suppressing evidence seized by police officers during a residence search pursuant to a search warrant. The questions posed are whether the affidavit submitted in support of the search warrant reflects sufficient facts to support probable cause for valid issuance considering that those facts were supplied by a voluntary and identified, as opposed to a paid or anonymous, informant; and whether the presence of material facts known to the affiant, but omitted from the search warrant affidavit, cause the warrant to be defective so that evidence seized must be suppressed. After the court of appeal recalled the writ it had granted, we granted the state's application for a writ of certiorari and now reverse the trial court's ruling.
The search warrant affidavit, submitted by Deputy Sergeant Doug Modrynski of the Terrebonne Parish Sheriff's Office on the basis of a voluntary report by witness Gregory Mataya, provided in part:
At approximately 4:30 P.M. this date 11-17-81, affiant received a phone call from Major Buquet advising the affiant to call one Gregory Mataya in reference to narcoitcs (sic). Affiant then called Mr. *1202 Mataya and he stated that between the hours of 1:00 P.M. and 2:30 P.M. he was at the above location talking to his wife, Phyllis Mataya, and was obtaing (sic) some money to pay some bills when he noticed Jody Morris walk past the door with a bag of marijuana in it (sic). Affiant was advised that Mr. Mataya knew what the substance was because he used it before and he went on to tell affiant that these people were known to bring large amounts of marijuana into Terrebonne Parish. Mr. Mataya stated that he is coming forward with this information because there is (sic) two infants in the above mentioned residence and he is concerned about their welfare. Mr. Mataya stated that to the best of his knowledge there is still some marijuana in the house.
The evidence educed at the motion to suppress hearing related to facts both within and outside of the search warrant affidavit. The record reflects that Mataya voluntarily contacted the police and reported the following information. That same day he had gone to the Morris home in Schriever, Louisiana to see his estranged wife who was temporarily living there with their child. Mataya was not permitted to enter but spoke with his wife through a screen door. Nevertheless, Mataya observed Jody Morris inside with a plastic baggie filled with a material which Mataya believed to be marijuana.
At Officer Modrynski's request, Mataya thought the matter over for several hours before agreeing to report his observations to a judge under oath. Prior to seeing the judge, Mataya showed the officer the way to the Morrises' house. During the trip Mataya told the policeman that he had served time for a felony conviction and that he and Mrs. Mataya were involved in a dispute over his right to visit their child. Modrynski prepared the affidavit and took Mataya to a judge's house to apply for a search warrant. Both the police officer and Mataya stated to the judge under oath that the information in Modrynski's affidavit was true. The judge signed the search warrant after he questioned Mataya who subsequently broke down and cried with concern over the welfare of his child. After Mataya and the police officer left the judge's house Mataya telephoned his wife to warn her that police would soon arrive to search the Morris residence.
Pursuant to the warrant police officers searched the defendant's house later the same night and discovered approximately six pounds of marijuana and a white substance, later identified as cocaine. Jody Morris and Donald Morris were charged by bills of information with unlawful possession with the intent to distribute marijuana and cocaine in violation of La.R.S. 40:966 C. Mrs. Mataya, who left the defendants' home following her husband's warning, was not arrested.
A search warrant may issue only upon probable cause established to the satisfaction of a judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. La. Const. art. I § 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Boneventure, 374 So.2d 1238, 1239 (La.1979). Normally, the law does not permit a reviewing court to "go outside the four corners of a search warrant affidavit" in reviewing a probable cause determination. State v. Duncan, 420 So.2d 1105, 1108 (La.1982); State v. Huffman, 419 So.2d 458, 459-460 (La. 1982); State v. Daniel, 373 So.2d 149 (La. 1979). However, when there are inadvertent material omissions, the court will look to outside evidence to support or destroy a probable cause finding. State v. Lingle, 436 So.2d 456, 459 (La.1983); State v. Lehnen, 403 So.2d 683 (La.1981); State v. Rey, 351 So.2d 489 (La.1977) (inadvertent material misstatements, rather than omissions, in search warrant affidavit at issue).
*1203 While anyone who gives information to police may be called an "informant", a distinction may be drawn between an unnamed denizen of the criminal underworld who habitually witnesses and reports criminal activity to police for pay or some other advantage and the citizen who witnesses or is the victim of criminal conduct and reports to police as a matter of civic duty. 1 W. LaFave, Search and Seizure, A Treatise of the Fourth Amendment, § 3.3 p. 499-500 (1978). When the informant is an anonymous person who routinely "tips" police to criminal conduct it is critical that there be some specific showing that he is a credible person and that his information is reliable. In contrast, citizen informant reports based on firsthand knowledge carry a high indicia of credibility in the determination of probable cause. State v. Lehnen, supra, at 685 n. 3. U.S. v. Darensbourg, 520 F.2d 985 (5th Cir.1975). The citizen informer is a presumptively inherently credible source. State v. Mosley, 412 So.2d 527, 530 (La.1982).
However, there are exceptions to the general rule that information supplied by a citizen informer is presumptively credible. The police should remain alert to the presence of circumstances which would preclude the presumption that the informer is truthful, such as evidence that the informer has some motive to falsify his information. However, the mere fact that a person is known to have engaged in prior criminal conduct does not in and of itself rebut the presumption. Conviction of a prior crime should not suggest unreliability if the prior offense is unrelated to the crime witnessed or there is no apparent motive for reporting criminal activity, such as the hope of reducing a penalty. See, LaFave, supra, § 3.4 p. 599 n. 56. Loveday v. State, 74 Wis.2d 503, 247 N.W.2d 116 (1976) (babysitter a citizen-informer despite a criminal record); People v. Beto, 86 Ill.App.3d 622, 41 Ill.Dec. 871, 408 N.E.2d 293 (1980) (fact of prior prostitution did not affect citizen informant status); People v. Mitchell, 68 Ill.App.3d 370, 24 Ill.Dec. 949, 386 N.E.2d 153 (1971) (man with prior felony conviction can be a citizen-informer in regard to his observation of a man in a bar with a gun.)
Applying these precepts to the present case we find that the judge issued the search warrant on probable cause because he reasonably believed that criminal evidence or contraband would be found at the Morris residence. The face of the search warrant affidavit shows that the informant voluntarily identified himself and gave his information and that the police were able to recontact him at the telephone number which he supplied. The basis of the informant's knowledge was creditable since he personally observed illegal drugs, which he had used before and could identify on sight. His motive for reporting the information, that is, his concern for his own child and another infant living with defendants, further suggests that the information was trustworthy. The facts contained within the affidavit, supplying an underlying basis to believe that the informant's report was true, together with the presumptive credibility associated with a citizen informer and reinforced by the magistrate's personal assessment of the informer, supply a reasonable basis for finding probable cause to search the Morris home.
Notwithstanding the reasonableness of the magistrate's finding of probable cause, the defendant argues that the search warrant is defective since the record shows that several material facts known to the officer affiant were not included within the search warrant affidavit, viz., that the informant was seeking expanded child visitation rights, possibly custody, and that he knew that seizure of illegal drugs in the defendant's home could lead to his wife's arrest and his child being placed in the custody of the Welfare Department. Also, while affiant testified at the motion to suppress hearing that Mataya discussed his felony conviction with the judge, Officer Modrynski did not directly relate this fact to the magistrate in his affidavit.
Following the rule established in State v. Rey, supra, and expanded in State v. Lehnen, supra, we will rectify misstatements *1204 or omissions in the search warrant by correcting errors or supplying the missing information and then retest the affidavit for the presence of probable cause. Since the informant wished to gain greater access to his child, his information could have been interpreted either as a false report to embarrass or inconvenience his wife, or as a correct report of drug activity designed to enhance his chances of succeeding in gaining custody of his child or greater visitation rights. Mataya gave his information in person before a judge after being given several hours to consider the matter and change his mind. The issuing magistrate had an ample opportunity to observe Mataya's demeanor and to question him about his previous criminal record and his concern for his child. See, e.g. U.S. v. Hunley, 567 F.2d 822 (8th Cir.1977). Under the circumstances, the magistrate reasonably could have found it more probable than not that Mataya was a credible informant and that his information was reliable. Accordingly, we find that if additional relevant facts such as the informant's wish to gain child visitation and/or custody had been included within the warrant affidavit probable cause to search would still have been apparent.
There is no evidence in the record to suggest that, if the affidavit had cited Mataya's prior unspecified felony conviction, the informant's credibility would have been so impugned as to defeat a finding of probable cause. Since the informant's sentence had apparently been served, he had nothing to gain insofar as that crime was concerned by providing the police with information about the Morrises. Also, there was no showing to what extent the felony may have involved moral turpitude so as to cast doubt on Mataya's credibility. Based on the record before us, the fact that Mataya had on some previous occasion been convicted of an undisclosed felony does not undermine the existence of probable cause.
Accordingly, the trial judge's ruling suppressing the evidence is reversed and the case is remanded for further proceedings.
SUPPRESSION OF EVIDENCE REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.